RECEIPT # _____
AMOUNT $ _____
SUMMONS ISSUED _____
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _____
DATE _____

# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES T. STAMAS, JANICE LOUX, DAVID COLELLA, HENRY C. GREEN, JEFFREY K. NELSON AND MARK ANDERSON, as Trustees and on behalf of the GREATER BOSTON HOTEL EMPLOYEE/LOCAL 26 HEALTH AND WELFARE TRUST FUND, | CIVIL ACTION<br><br>No.<br><br>**04 12352 NG**<br><br>**JURY TRIAL DEMANDED** |
| Plaintiffs, | |
| v. | |
| THE SEGAL COMPANY | |
| Defendant. | |

## COMPLAINT

Plaintiffs for their complaint allege:

### NATURE OF ACTION

1. This is an action for negligence, malpractice, and breach of contract stemming from defendant Segal Company's errors and neglect in providing actuarial services to the Trustees of the (the "Fund"), an employee health and welfare plan benefitting thousands of hotel and restaurant workers in Massachusetts.

///

1

## PARTIES

2. The Greater Boston Hotel Employee/Local 26 Health and Welfare Trust Fund is an employee welfare benefit plan within the meaning of Section 3(2) of the Employee Retirement Income Security Act of 1974, as amended 29 U.S.C. §1000, et seq. ("ERISA"). The Fund was established under an Agreement and Declaration of Trust effective as of July 8, 1959 (the "Trust Agreement"). As required by the Trust Agreement, the Fund is administered by a Board of Trustees consisting of six members (the "Board of Trustees" or the "Trustees"), who manage the Fund for the benefit of its more than 2800 participating hotel and restaurant workers.

3. Plaintiffs James T. Stamas, Janice Loux, David Colella, Henry C. Green, Jeffrey K. Nelson and Mark Anderson are members of the Board of Trustees.

4. Defendant Segal Company is a corporation organized under the laws of New York, with its principal place of business in New York.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this action under 28 U.S.C. §1332, because there is complete diversity of citizenship between the parties.

6. Venue is proper in this Judicial District under 28 U.S.C. §1391.

7. This Court has personal jurisdiction over the Segal Company under Fed. R. Civ. P. 4(k), as this action arises out of (1) a contract made in this state and to be performed in this state; and (2) tortious conduct in this state. The Segal Company has an office located in Boston, Massachusetts registered to do business in this state.

/ / /

## THE FUND

8. The Fund is an employee welfare benefit fund that receives contributions from multiple employers. Employees who work for any employer who contributes to the Fund may qualify to receive Fund benefits.

9. Approximately forty employers make contributions to the Fund according to the terms of collective bargaining agreements. Contribution rates, defined in terms of dollars per hour worked are paid to the Fund monthly. Contributions are invested and used to pay Fund benefits.

10. Under the Trust Agreement, the Trustees of the Fund have full authority to determine the nature, amount and duration of benefits to be paid by the Fund. The terms and conditions of these benefits are set forth in detail in the Plan Document. Under ERISA, the terms of the Plan Document may be amended to reduce benefits to be earned by employees in the future.

## THE SEGAL COMPANY'S SERVICES TO THE FUND

11. At all times material hereto, the Trustees retained the Segal Company, an employee benefits and actuarial consulting firm, to provide advice, analysis and recommendations concerning the structure and costs of Fund benefits. Specifically, the Trustees engaged the Segal Company for the purpose of procuring professional expertise and advice in determining future claims experience, future revenues and minimum contribution levels necessary to fund existing benefits. In return for the Segal Company's services, the Fund paid the Segal Company more than $44,000 in 2001 in fees and more than $47,000 for 2002.

12. Before and during the time the Trustees engaged the Segal Company, the Segal Company held itself out as an experienced and qualified employee benefit consulting and actuarial firm well-suited to service the Fund's needs.

13. At the outset of and throughout the period the Segal Company served as the Fund's actuarial consulting firm, the Trustees provided the Segal Company with extensive documentation concerning the Fund, including the Plan Document and all amendments as such amendments were adopted. The Trustees also supplied the Segal Company with, and otherwise made available, data concerning contribution rates, the Fund's participants, number of employees, average hours worked, and all other data necessary for sound actuarial advice.

14. To fulfill certain of its obligations to the Fund, the Segal Company submitted actuarial reports to the Trustees. The Segal Company's reports described the benefits prescribed by the Plan Document, summarized data on the Fund's participants and beneficiaries, and purported accurately to forecast revenue and liabilities based on reasonable actuarial assumptions and the Fund's experience.

15. The Fund's health and welfare plan is funded in substantial part by the collective-bargaining agreement ("collective-bargaining agreement") between the Greater Boston Hotel and Motor Inn Association and the Hotel Employees and Restaurant Employees Union, Local 26. The Fund's revenues come in substantial part from contributions paid by the participating employers based on hours worked by employees in the bargaining unit. That contribution rate is fixed by the Agreement. Participating employers are only obligated to pay the fixed rate defined in the Agreement.

16. The 1996-2001 collective-bargaining agreement expired on November 30, 2001. In 2001, and continuing through November 30, 2001, the Segal Company advised the Trustees what contribution rate would be necessary for the Fund to maintain financial health of the Fund at existing benefit levels.

17. The Segal Company knew that its reports and advice served to inform the Trustees whether the Fund's assets exceeded its liabilities. The Segal Company also knew that the Trustees would rely, and the Trustees in fact relied, on the Segal Company and the Reports to determine whether to seek adjustments in contribution rates.

## MALFEASANCE

18. Through persistent neglect and reckless disregard of its professional responsibilities to the Fund, the Segal Company, beginning in or about 2001 and continuing through November 30, 2001, committed critical errors in preparing the estimates of future income in Reports and other materials provided to the Trustees. As a result, the Segal Company erroneously measured and severely overestimated the projected income of the Fund. This erroneous forecast resulted from negligent factual assumptions that were made in breach of the Segal Company's duty of care, including a materially negligent assumption of employee hours for which contributions would be made. A reasonable actuary would have investigated, and would have been able to discover from Fund records, that the actual history of employee hours for which contributions were made, was significantly lower than the employee hours that the Segal Company negligently assumed.

///

5

19. The Segal Company's errors caused the Trustees to seek adjusted contribution rates based on a severely inflated forecast of Plan revenue. On November 30, 2001, the Fund's union and employer sponsors negotiated a new collective-bargaining agreement from December 1, 2001 until November 30, 2006 with a fixed contribution rate reflecting the inadequately low hourly rate defined by the Segal Company's forecasts to the Trustees. This contribution rate remains fixed for the duration of the 2001-2006 collective bargaining agreement.

20. These errors caused the Segal Company to overestimate the Fund's income for the duration of the 2001-2006 collective-bargaining agreement. The resulting shortfall became known to the Trustees by October 9, 2002, when the Segal Company wrote with new projections noting: "We are obligated to note that these projections predict that the Fund does not has [sic] sufficient plan assets or income to meet its current contractual claim and expense obligations . . ."

21. As a result of the errors in the Segal Company's valuations, its prior representations to the Trustees that the Fund's contribution rates were sufficient to fund the benefits prescribed by the Plan Document were false. The Fund's average contribution rate was in fact substantially less than the Fund's costs.

22. In response to the shortfall caused by the Segal Company's negligent advice, the Trustees have been forced drastically to reduce health and welfare benefits available to participants. The Trustees have modified the Plan benefits to impose deductibles and co-payments on Plan participants. The Fund has also experienced a decline in its assets of approximately $5 million as a result of the errors in the Segal

Company's valuation of the Fund's liabilities. Had the Trustees received a sound actuarial report in November 2001 based on competently researched assumptions, they would have sought higher contribution rates in order to preserve the Fund's financial integrity and the benefit levels previously available to participants..

## FIRST CAUSE OF ACTION
### (Negligence)

23. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 22.

24. The Segal Company owed plaintiffs a duty to exercise due care and skill in providing actuarial services to the Fund.

25. By committing gross errors in providing actuarial services to the Fund, and in failing promptly to discover and disclose those errors to the Trustees, the Segal Company acted recklessly and with gross negligence.

26. As a direct, proximate and foreseeable result of the Segal Company's gross negligence, the Fund has suffered actual damages in an amount to be determined at trial, but in no event less than $10 million and is entitled to punitive damages.

## SECOND CAUSE OF ACTION
### (Malpractice)

27. Plaintiffs repeat and reallege the allegations of paragraphs 1 through 26.

28. In undertaking to provide actuarial services to the Fund, the Segal Company owed a duty to the Fund to discharge its professional obligations with the degree of skill and competence expected and required of actuaries.

29. By recklessly, wantonly and repeatedly committing gross errors in providing actuarial services to the Fund, and in failing promptly to discover and disclose

those errors to the Trustees, the Segal Company failed to discharge its professional obligations to the Fund with the degree of skill and competence expected and required of actuaries.

30. As a direct, proximate and foreseeable result of the Segal Company's malpractice, the Fund has suffered actual damages in an amount to be determined at trial, but in no event less than $10 million and is entitled to punitive damages.

### THIRD CAUSE OF ACTION
### (Breach of Contract)

31. Plaintiffs repeat and reallege the allegations of paragraph 1 through 30.

32. The Segal Company entered into a contractual relationship with the Trustees to serve as the Fund's actuary. Among other things, the contract obligated the Segal Company to provide accurate, reliable and quality actuarial services on behalf of the Fund.

33. The Trustees, acting on behalf of the Fund, performed all of their obligations under their contract with the Segal Company.

34. By recklessly, wantonly and repeatedly committing gross errors in providing actuarial services to the Fund, and in failing promptly to discover and disclose those errors to the Trustees, the Segal Company breached its contract with the Trustees.

35. By reason of the foregoing, the Fund has suffered actual damages in an amount to be determined at trial, but in no event less than $6 million and is entitled to punitive damages.

WHEREFORE, plaintiffs request judgment against the Segal Company awarding:

1.  Compensatory damages in an amount to be determined at trial, but in no event less than $10 million.

2.  Punitive damages in an amount to be determined at trial.

3.  Prejudgment interest.

4.  The costs and expenses of this action, including reasonable attorneys' fees; and

5.  Such other and further relief as the Court deems just and proper.

DATED:    November 4, 2004         Respectfully submitted,

DAVIS, COWELL & BOWE, LLP

By: /s/ Michael Anderson
     Michael T. Anderson

8 Beacon Street, 4th Floor
Boston, MA 02108
Ph: (617) 227-5720; Fax: (617) 227-5767

Attorney for Plaintiffs

## JURY DEMAND

Plaintiffs hereby demand a trial by jury of all issues that may be so tried.

DATED:    November 4, 2004         Respectfully submitted,
                                   DAVIS, COWELL & BOWE, LLP

By: /s/ Michael Anderson
     Michael T. Anderson

8 Beacon Street, 4th Floor
Boston, MA 02108
Ph: (617) 227-5720; Fax: (617) 227-5767

Attorney for Plaintiffs

50/C:\My Documents\MTA\SEGAL complaint.wpd
11/1/2004/11:13:10 HZO 7500